Jason W. Brooks, Esq. (SBN 249344)
Jason@altViewLawGroup.com
John M. Begakis, Esq. (SBN 278681)
John@altViewLawGroup.com
**ALTVIEW LAW GROUP, LLP**
11939 Darlington Avenue, #101
Los Angeles, California 90049
Tel: (310) 663-7638
Fax: (818) 789-1431

*Attorneys for Plaintiff* MORONI MATTEO, an individual

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MORONI MATTEO, an individual<br><br>Plaintiff,<br><br>vs.<br><br>DIEGO DOLCIAMI SERVETTINI, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. DECLARATORY JUDGMENT**<br><br>**2. CANCELLATION OF TRADEMARK APPLICATION** |

Plaintiff alleges:

**NATURE OF THE ACTION**

1. This is an action for a declaration that Plaintiff is the rightful owner of the "DM PRANKS" word mark (the "Mark") in International Classes 25 (for clothing), 35 (advertising and business services), and 41 (for entertainment services

in the nature of development, creation, production and post-production of entertainment content).

**THE PARTIES**

2. Plaintiff MORONI MATTEO ("Plaintiff") is an individual residing in Magione, Italy.

3. Plaintiff is informed and believes and, on the basis of such information and belief, herein alleges that DIEGO DOLCIAMI SERVETTINI ("Defendant") is an individual residing in Magione, Italy.

4. The true names and capacities of DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at this time, and Plaintiff therefore sues said defendants by such fictitious names, and when the true names, capacities, and relationships of such defendants are ascertained, Plaintiff will ask leave of the Court to amend this Complaint to insert the same.

5. Plaintiff is informed and believes and, on the basis of such information and belief, herein alleges that each defendant named in this Complaint was, at all times herein mentioned, and now is, the agent or employee of each other defendant herein, and was at all times acting within the course and scope of said agency or employment. When referring to "Defendants" herein, Plaintiff intends to include Servettini, and all other defendants.

**JURISDICTION & VENUE**

6. This is an action arising in part under 15 U.S.C. § 1051, et seq. of the Lanham Act, and under California statutory and common law.

7. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. §§ 1121 and 1125(d), and 28 U.S.C. §§ 1331, 1338(a) and (b), in that it involves an action arising under the Lanham Act. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

///

8. On information and belief, Defendant actively advertises in and seeks business from citizens and residents of the United States, including California, and knew or had reason to know that the primary effects caused by his actions that give rise to the claims in the Complaint will be experienced by Plaintiff and within this District. As such, this Court has personal jurisdiction over Defendant, and venue is proper pursuant to 28 U.S.C. § 1391.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

9. In or about early 2013, Plaintiff conceived of the idea of creating a YouTube channel, wherein he would broadcast videos that he created featuring unsuspecting individuals being caught in, and reacting to, elaborate stunts or "pranks".

10. In furtherance of this idea, on or about May 16, 2013, Plaintiff created the YouTube channel "DM PRANKS PRODUCTIONS" (the "DM Pranks Channel"). A true and correct copy of a screenshot of the DM Pranks Channel viewer information, which includes the channel's creation date, is attached hereto as Exhibit "A" and incorporated herein by this reference.

11. On or about June 25, 2013, Plaintiff also created the "DM PRANKS" Facebook Page.

12. On or about July 5, 2013, Plaintiff published his first "prank" video on the DM Pranks Channel. As of the date of this filing, said July 5, 2013 video has garnered over 2 million views. A true and correct copy of a screenshot of Plaintiff's first prank video, which evidences the date of publication, is attached hereto as Exhibit "B" and incorporated herein by this reference.

13. On or about January 23, 2014, Plaintiff entered into a Content Partner Distribution Agreement with Collective Digital Studio, LLC ("CDS"), for the collection and distribution of revenue earned by Plaintiff from views of his videos on the DM Pranks Channel. Under the standard terms and conditions set forth on Exhibit "A" of the agreement, Plaintiff represented and warranted that Plaintiff had

the full right, power, and authority to enter into the agreement for the license of certain rights owned by Plaintiff in the DM Pranks Channel to CDS. A true and correct copy of the Content Partner Distribution Agreement (as well as Exhibit "A" to the same) is attached hereto as Exhibit "C" and incorporated herein by this reference.

14. On or about June 13, 2014, Plaintiff entered into a Merchandise Partnership Agreement with Deep Fried Productions, Inc. ("DFP"), wherein Plaintiff agreed to license the Mark to DFP in exchange for DFP's agreement to create and maintain an online store for the sale of t-shirts and other similar merchandise bearing the Mark, and to produce and fulfill orders for such merchandise when orders were placed via the online store. A true and correct copy of the Merchandise Partnership Agreement is attached hereto as Exhibit "D" and incorporated herein by this reference.

15. On or about June 25, 2014, Plaintiff registered the domain name <www.DMPranks.net> (the "DM Pranks Site"), which displays the Mark, as well as some of the content Plaintiff has produced and broadcast via the DM Pranks Channel. The DM Pranks Site also directs visitors to Plaintiff's online store, where merchandise bearing the Mark can be purchased. A true and correct copy of the WHOIS registration information for the DM Pranks Site, as well as a screenshot of the DM Pranks Site, are attached hereto as Exhibit "E" and incorporated herein by this reference.

16. By in or about 2014, the DM Pranks Channel had become very successful, with videos broadcast over the channel regularly receiving millions of views. A video published on or about March 17, 2014 involving a flamethrower prank has received 15.9 million views as of the date of this Complaint. Another video published on or about June 15, 2014 involving a "killer clown" prank has received 81.4 million views as of the date of this Complaint. True and correct copies of screenshots of each above-referenced video, which establish the number of

views for each video, are attached hereto as Exhibit "F" and incorporated herein by this reference.

17. Because of Plaintiff's success with the DM Pranks Channel, Plaintiff decided to launch other YouTube channels that would broadcast other content. In furtherance of this plan, Plaintiff hired Defendant to help cut and edit videos to be published to Plaintiff's various YouTube channels.

18. Defendant would regularly invoice Plaintiff for services rendered on behalf of Plaintiff, and Plaintiff would regularly pay Defendant pursuant to such invoices. True and correct copies of such invoices from Defendant to Plaintiff are attached hereto as Exhibit "G" and incorporated herein by this reference.

19. Defendant was well aware of Plaintiff's ownership of the Mark from the first moment Defendant came to work for Plaintiff. Some of Defendant's editing services were rendered for videos broadcast to the DM Pranks Channel. Additionally, Defendant sent invoices to Plaintiff at Plaintiff's email account identified as, "DMPranks@gmail.com". True and correct copies of emails from Defendant to Plaintiff at Plaintiff's "DMPranks@gmail.com" email account are attached hereto as Exhibit "H" and incorporated herein by this reference.

20. Despite Defendant's prior knowledge of Plaintiff's ownership of the Mark, on or about June 26, 2015, Defendant filed an international application, bearing application number 1299064, for foreign trademark registration of the word mark "DM PRANKS" (the "Identical Mark") in international classes 25, 35 and 41, among others. A true and correct copy of the World Intellectual Property Organization's information for the Identical Mark is attached hereto as Exhibit "I" and incorporated herein by this reference.

21. Further, on or about December 18, 2015, Defendant filed an application with the United States Patent and Trademark Office ("USPTO") under Section 66(a) of the Lanham Act for U.S. trademark registration of the word mark "DM PRANKS" in, among others, International Classes 25, 35 and 41 (the "Competing

Application"). The Competing Application contained a verified statement from Defendant stating that "[t]o the best of [Defendant's] knowledge and belief, no other person, firm, corporation, association, or other legal entity has the right to use the mark in commerce…either in the identical form thereof or in such near resemblance thereto…" A true and correct copy of the Competing Application is attached hereto as Exhibit "J" and incorporated herein by this reference.

22. On or about March 8, 2016, Plaintiff filed an application with the USPTO for U.S. Trademark Registration in the Mark in International Class 41. On or about October 11, 2016, Plaintiff received a Suspension Notice from the USPTO, which stated that Plaintiff's application would be suspended until a determination of registration was made as to the Competing Application, on the basis that Plaintiff's application for registration in the Mark would create a likelihood of confusion with Defendant's application for registration of an identical mark. A true and correct copy of the USPTO's Suspension Notice is attached hereto as Exhibit "K" and incorporated herein by this reference.

23. On or about October 30, 2016, an Italian civil court ruled that: (a) based on the chronology of events, Plaintiff was the senior user of the Mark; (b) Plaintiff had sufficiently proven – via showing a "constant, large use" of the Mark – that the Mark had "acquired a qualified general notoriety" before Defendant attempted to register the Identical Mark; and (c) the chronology of events, previous relationship between the parties, and complete knowledge of Plaintiff's prior use of the Mark meant that Defendant had engaged in bad faith in attempting to register the Identical Mark. A true and correct copy of a translated version of the Italian civil court's order is attached hereto as Exhibit "L" and incorporated herein by this reference.

24. On or about December 5, 2016, Defendant registered the domain name <www.DMPranksProductions.com> (the "Competing Site"), which displays Defendant's Identical Mark. The Competing Site also directs visitors to Defendant's online store, where merchandise bearing the Identical Mark, where

merchandise bearing the Identical Mark can be purchased. A true and correct copy of WHOIS record regarding the Competing Site is attached hereto as Exhibit "M" and incorporated herein by this reference.

25. As such, this Complaint necessarily results.

## FIRST CAUSE OF ACTION

### Declaratory Judgment

26. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 25, as though set forth in full herein.

27. An actual controversy exists between Plaintiff and Defendant regarding whether Plaintiff has senior rights in the Mark.

28. An actual controversy exists between Plaintiff and Defendant regarding whether a likelihood of confusion exists between the Mark and Defendant's Identical Mark.

29. An actual controversy exists between Plaintiff and Defendant regarding whether Defendant's use of the Identical Mark infringes upon the Mark.

30. An actual controversy exists between Plaintiff and Defendant regarding whether Defendant has the right to seek registration of the Identical Mark via the Competing Application.

31. An actual controversy exists between Plaintiff and Defendant regarding whether Defendant has attempted to register the Identical Mark in bad faith.

32. An actual controversy exists between Plaintiff and Defendant regarding whether Defendant has worked a fraud upon the USPTO via intentional misrepresentations made in its Competing Application.

33. An actual controversy exists between Plaintiff and Defendant regarding whether the Competing Application should be canceled.

34. An actual controversy exists between Plaintiff and Defendant regarding whether Defendant has violated the Anticybersquatting Consumer Protection Act

(the "ACPA"), set forth in 15 U.S.C. § 1125(d) by registering and using a domain name confusingly similar to, or dilutive of, Plaintiff's Mark.

35. Plaintiff reasonably anticipates litigation regarding the Mark, based upon the wrongful conduct of Defendant. On that basis, an actual controversy exists between Plaintiff and Defendant. Therefore, Plaintiff requests that the Court grant declaratory relief, declaring that Plaintiff has senior rights in the Mark; that a likelihood of confusion exists between the Mark and Defendant's Identical Mark; that Defendant's use of the Identical Mark constitutes trademark infringement; that Defendant does not have the right to seek federal registration of the Identical Mark in International Classes 25, 35 and 41; that Defendant's Competing Application was made in bad faith and constitutes a fraud upon the USPTO; that Defendant's Competing Application should be cancelled; and that – by and through the Competing Site – Defendant has registered and uses a domain name that is identical or confusingly similar to the Mark.

36. Plaintiff is informed and believes and, on the basis of such information and belief, alleges that Defendant's wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiff's business, reputation and goodwill. Plaintiff has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Cancellation of Trademark Application

37. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 36, as though set forth in full herein.

38. Defendant claims ownership of the Competing Application.

39. The Competing Application should be canceled pursuant to 15 U.S.C. § 1063 because Plaintiff has senior rights in the Mark, and Defendant has filed its Competing Application fraudulently and in bad faith.

40. Specifically, Defendant was well aware of the Mark and intentionally selected the Identical Mark for its Competing Application to trade off the goodwill associated with the Mark. Further, Defendant knowingly made a false representation, with the intent to deceive, in its Competing Application, as alleged herein above.

41. Pursuant to the Lanham Act, this Court has jurisdiction over the USPTO to make appropriate entries on the Federal Register with respect to the Competing Application.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. For a declaration that:
   a. Plaintiff first used the Mark in commerce in International Classes 25, 35 and 41;
   b. A likelihood of confusion exists between the mark and Defendant's Identical Mark;
   c. Defendant's use of the Identical Mark constitutes trademark infringement;
   d. Defendant has no right to apply for federal registration of an identical or confusingly similar mark with the USPTO in International Classes 25, 35 and 41;
   e. Defendant's Competing Application was made in bad faith and works a fraud upon the USPTO;
   f. Defendant's Competing Application should be cancelled; and
   g. Defendant has registered and uses a domain name that is identical or confusingly similar to the Mark, in violation of the ACPA.
2. For an order directing the USPTO to cancel Defendant's Competing Application;

///

3. For an award of Plaintiff's attorneys' fees and costs incurred in this action; and

4. For such other and further relief as the Court may deem just and proper.

DATED: March 27, 2017

**ALTVIEW LAW GROUP, LLP**

By: /s/ John Begakis
JASON W. BROOKS
JOHN M. BEGAKIS
*Attorneys for Plaintiff*
MORONI MATTEO, an individual